+ DWELLING HOUSE INS. CO. v. JULIA L. WEBSTER ET AL.

1. TITLE IN WIFE ALONE WHEN REPRESENTED AS IN HUSBAND AND WIFE JOINTLY, AVOIDS POLICY.

Where in an application for an insurance upon a dwelling-house by husband and wife, they represent that they are the joint owners of the property, and agree that such representations shall be considered as a warranty, and avoid the policy if false, if in fact the title was in the wife alone, and she was the exclusive owner of the property, no recovery can be had on the policy issued upon such application, in case of loss; and it is not necessary for the insurer to allege or prove intentional fraud on the part of the plaintiff in respect to such representations, sec. 3643, Rev. Stat., having no application to such a case.

2. IF POLICY STIPULATES AGAINST SUBSEQUENT MORTGAGE SUCH INCUMBERANCE AVOIDS POLICY, NOTWITHSTANDING RISK NOT INCREASED.

If such policy contains a condition that if the property shall thereafter be encumbered, by mortgage or otherwise, by the insured, without the knowledge and consent of the insurer, such policy shall thereby become void, no recovery can be had on such policy if the insured subsequently incumbers the property by mortgage, without the knowledge and consent of the insurer; and it is not incumbent on the insurer to allege or prove that the risk was thereby increased.   Sec. 3643, Rev. Stat., does not apply to, or cover such a condition.

Error to the Court of Common Pleas of Ashtabula county.

LAUBIE, J

This is a proceeding in error to reverse the judgment of the court of common pleas, in an action brought by Julia L. Webster and James E. Webster, her husband, upon a policy of insurance, issued to them by the plaintiff in error, the Dwelling House Ins. Co., insuring their dwelling-house in the sum of $2000, and personal property in the dwelling-house to the amount of $250.

The petition in the original action contains the ordinary and usual allegations in a suit upon a fire policy, for a total loss, with additional allegations in respect to matters that were claimed to constitute a waiver of "proofs of loss."

The insurance company, in its answer, set up three defenses, each separately, as a bar to a recovery.   One, that the parties plaintiffs had represented that they were the joint owners of the dwelling-house and property insured, that their representations to that effect were not true, and that by the terms of the policy, which were set out in full, such representations as to ownership were to be considered a warranty, and if false, make the policy void. That in fact the real estate was the sole property of Julia L. Webster, and that the husband was the sole owner of the personal property; but intentional fraud on the part of the plaintiffs was not alleged.

Secondly, that there was a mortgage incumbrance to one Phillips, of $800, placed upon the property after the policy was issued, without any notice to the company, or consent of

*The judgment in this case was affirmed by the Supreme Court, 53 O. S., 558:  The circuit decision is cited with approval by the Supreme Court in 53 O. S., 558. 569.

the company to it, and that, by the terms of the policy, it rendered the policy void, the policy providing, in substance, that any incumbrance thereafter placed upon the property, or any change made in the title, without notice to the company, and consent thereto by it in writing, should avoid the policy; but there was no allegation that the risk was thereby increased.

The third defense was, that there was no proof of loss, or perhaps no truthful proof of loss, furnished by the plaintiffs to the defendant company, after the fire, as the policy required.

In their reply plaintiffs admitted that Mrs. Webster had the legal title to, and was the sole owner of the dwelling-house, and that Mr. Webster was the sole owner of the personal property, but denied the misrepresentations alleged, and averred that the true state of the title was made known to the agent of the company at the time of the application for the policy; and further averred, that if the misrepresentations were made as claimed, they constituted no defense to the action, because of the provisions of sections 3643, 3644, Rev. Stat., as no intentional fraud was charged. They denied that they had subsequently incumbered the real estate by mortgage, without the knowledge and consent of the company; averred such knowledge and consent; and, further, if there were no such knowledge and consent, it constituted no defense, because of the provisions of the sections aforesaid, as it was not charged that the risk had been thereby increased.

In reference to two matters, we may at the outset dispose of them in a few words, so that they need not be referred to hereafter. One is in reference to the personal property, which belonged solely to the husband. The plaintiffs abandoned this part of the case, and did not ask for any recovery under the policy for the loss of the personal property.

Secondly, as to the third defense, the failure to furnish proof of loss. There is no allegation in the answer what the effect of that failure would be, according to the terms of the policy. It simply alleges that such proof of loss as is therein stated was to be rendered, but the effect of the failure to render it, is not alleged. The case was argued upon the proposition that by the terms of the policy a failure to furnish proof of loss as therein stated, would render the policy void; but as there is no such allegation in the answer, we may dismiss that from consideration, and it leaves to be considered only the two other defenses.

The bill of exceptions does not attempt to set out all of the evidence. It states merely that evidence was given by each party, tending to prove the issues upon their part. That the plaintiffs introduced evidence tending to prove the allegations of their petition; that the defendant introduced evidence tending to establish the allegations and statements of its answer, and that the plaintiffs in reply introduced evidence tending to sustain the allegations of their reply. So we have to look at the case as if there was testimony upon all the points involved in the controversy, and tending to prove all the allegations of the defendant's answer.

It appears by the bill of exceptions that the defendant's counsel asked the court to charge the jury this proposition:

"If the plaintiff, after the issuing of the policy sued upon, and before the loss, placed a mortgage lien upon the real estate upon which the house burned was situated, without notice to the company, or its consent to such incumbrance, such action on the part of the plaintiff was in violation of the terms of the policy, and rendered the policy void, and the plaintiffs, if the jury find the facts as above stated, cannot recover in this action."

This the court refused to give, to which the defendant excepted.

The charge on the questions here made, was as follows:

"GENTLEMEN OF THE JURY as you have already observed by the language which is used in the statute, there are substantially two defenses provided for by law, where a policy is issued and paid for upon a building and there is a total destruction of the building. The one is intentional fraud on the part of the insured, which would be the plaintiffs in this case, in procuring the policy to be issued; but as we have said to you, no fraud is charged, and therefore you need not consider it further, as it does not come within the issues of this case.

"The other we desire to call your special attention to. As we have said to you, in the absence of any change increasing the risk, without the consent of the insurer, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurers received a premium, shall be paid.

"The defendants allege that there was a change made by the plaintiffs in regard to the condition of this property, and they say, or claim, that it increased the risk, although that

is not alleged in the answer, and we say to you, gentlemen of the jury, as matter of law, that although you should find that subsequent to the issuing of the policy and before the fire, a mortgage was executed to Phillips, that does not of itself constitute a defense in this action. It only constitutes a defense under the statute, when the jury find that such mortgage increased the risk, or the hazard, or increased the liability of the insurance company to loss, and made it more hazardous for them.

"If placing such a mortgage upon the premises increased the hazard; made the liability greater for the company to sustain the loss; that the building thereby would be more liable to burn from one cause or from another, and the jury should find so, and that such change was made without the consent of the insurer, then we say to you that that would constitute a defense in favor of the company against the plaintiffs, and so far as such defense is concerned, in order to constitute such defense to the action of the plaintiff, it must materially increase the risk to the insurance company. In other words, that they would be assuming greater risk of loss on the policy of insurance that they had issued, than they would have been liable to, had not the mortgage been placed upon the property. Gentlemen of the jury, this is a question of fact to be determined by you.

"If the mortgage did not materially affect the risk, or increase the risk of the company, then we say to you, as matter of law, it would not be any defense whatever, although there might have been a mortgage upon the premises, placed there before the fire, and after the time when the policy was issued.

"Gentlemen of the jury, we now call your attention to another defense that is interposed here, and that is that the plaintiffs cannot recover if the proof shows and satisfies the jury that they were not the joint owners of this property. Upon that proposition we say to you, that so far as the condition of the property was concerned, by the express provisions of the statute, it was the duty of the agent who took the insurance as the agent of the company, to ascertain correctly; and the company on the representations that were made, by reason of the statements made in the application, issued a policy to them as the joint owners of the property, and the defendants each did have some interest in the property, although their interest might be several, so far as the insurance company are concerned, they having issued a policy to them jointly, by which they agreed to pay them in case of loss, the amount of $2000, if that was the amount mentioned in the policy; we say to you as a matter of law, that they would be estopped from defeating the plaintiffs' claim, by reason of the fact that they, without any fraud being perpetrated upon them by the plaintiffs, issued a joint policy when they ought to have issued something else. In other words, they could not take advantage of that which they themselves did, by their agent, in ascertaining the condition of the property, when they themselves have issued a policy to them as the joint owners.

"The only thing which they would have a right to do, would be to interpose it as a defense to recovery, and it would be immaterial in this case if both had a joint interest in the property, and they having issued their policy to them jointly, whether the one owned one particular part in severalty, or another owned another particular part in severalty, they would be entitled to recover in this case providing there was a total loss, the full amount of the policy, to-wit: the sum of $2000."

The statute referred to is what is commonly known as the Howland Law, and the construction which the court put upon the act, was that there were but two defenses that could be made to a recovery upon a policy of fire insurance in this state on a building where there was a total loss. One was "any change increasing the risk, without the consent of the insurer," and the other, "an intentional fraud" upon the part of the insured in obtaining the policy.

The court charged, in substance, that the company, having issued a policy to the plaintiffs, as joint owners, it would be no defense to show that they were not joint owners of the property, in the absence of intentional fraud, as the statute required the agent of the company to investigate and ascertain for himself the true state of the title.

And as to the second defense, the court charged that as to the incumbrance subsequently put upon the property, it was entirely immaterial and constituted no defense, unless the risk was thereby materially increased. To these three propositions, exceptions were taken.

Whether the court took the correct view of the law, depends upon the construction to be given to the Howland Law, secs. 3643 and 3644, Rev Stat.

Section 3643 reads as follows:

"Any person, company or association hereafter insuring any building or structure against loss or damage by fire, or lightning, by a renewal of a policy heretofore issued or otherwise, shall cause such building or structure to be examined by an agent of the insurer, and a full description thereof to be made, and the insurable value thereof to be fixed by such agent; in the absence of any change increasing the risk, without the consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss the whole amount

mentioned in the policy or renewal upon which the insurers receive a premium shall be paid, and in case of a partial loss, the full amount of the partial loss shall be paid, and in case there are two or more policies upon the property, each policy shall contribute the payment of the whole, or the partial loss, in proportion to the amount of insurance mentioned in each policy."

Section 3644 reads:

"A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party thereafter issuing a policy upon such application or renewal thereof, anything in the application or policy to the contrary notwithstanding."

As I have said, the court charged that under this statute, there were but two defenses open to a company, regardless of what might be the terms and conditions of the policy, or the contract between the parties: viz. (1), that a change had been made increasing the risk, without the consent of the insurer; and (2) that there had been intentional fraud on the part of the insured in obtaining the policy.

In effect the court held, that the condition of a building included the title of the land of which it was a part; that in making the inspection of the building, the insurer, through its agent, was required to investigate and determine the title of the applicant at its own risk; that the words "any change" and "intentional fraud," in the clauses specified, referred to title, subsequent incumbrances and every provision of the contract whereby the policy might become forfeited or rendered void, as well as to the physical condition of the building; that no agreement of the insured that the policy should become void by any act upon his part, would bind him, or defeat a recovery of the amount named in the policy, except a change which materially increased the risk, without the consent of the insurer, or some act of intentional fraud upon his part in obtaining the policy; that the provision of the statute that the amount named in the policy shall be paid in case of total loss, was absolute and indisputable, except in case of such change or fraud.

I think this is a grave misconception of the statute, and an unjustifiable perversion of the intention of the law-maker, and violative of all rules for the interpretation of statutes.

I think it is clear, from the language of the act, that the legislature intended, solely and only, to compel the insurer to ascertain, and place beyond future controversy, the actual condition of the building and its surroundings, so far as the same were open to sight and observation, and to establish and fix the measure of damages, in case there should be a recovery for a loss; and that it was not the intention to affect or touch any other condition of such contracts whereby the policy might be rendered void, before a loss occurred, by some act of the insured.

Why provide specifically for these things to be done by the insurer, and against unjust and technical defenses in these matters only, if the intention was that none of the numerous conditions of such policies, and defenses based thereon, should avail the insurer, unless there had been a change in reference thereto that materially increased the risk, without the consent of the insurer, or intentional fraud upon the part of the insured. With such an intention, to make such special provision as to but one or two of such conditions or technical defenses, would be amazing. The legislative mind having been directed to these technical defenses and numerous conditions of forfeiture in fire policies, if the design was to legislate against them all, certainly it would have carried it out by specifying all; or, naming none, would have included them all, by general description, as was done in regard to life policies, sec. 3625, 3626, Rev. Stat., or by directing that the amount named in the policy should in all cases be paid, on a total loss, unless there had been intentional fraud on the part of the insured, or a change in reference to the building, or matters connected therewith, increasing the risk, without the consent of the insurer, anything in the application or policy to the contrary notwithstanding, as in sec. 3644.

Having named the evils to be remedied, it must be assumed that the law-maker did not intend to remedy others not named, *expressio unius est exclusio alterius*—and the effect of the statute is only that the recovery of the amount

named in the policy shall not be defeated by reason of any statements in the application as to the condition, surroundings or value of the building, unless in case of intentional fraud on the part of the assured, or of a change increasing the risk, without the consent of the insurer.

All of the provisions of the statute, correctly interpreted, are consistent with this idea of its effect only.

To what do the words "any change" and "intentional fraud" in these clauses in the statute refer? As to the first, "in the absence of any change increasing the risk." Change in what? What is it that may be changed? The statute does not say; and so as to the second proviso, "and also of intentional fraud on the part of the insured." Fraud in relation to what? In what may it consist? The statute is silent. So that by some means known to the law, we must ascertain what change is meant, or what fraud is referred to. It will be noticed that these words are all parts of one sentence, and that there can be no doubt of the meaning of the preceding words of the sentence.

"Any person, company or association hereafter insuring any building or structure against loss or damage by fire or lightning, by a renewal of a policy heretofore issued or otherwise, shall cause such building or structure to be examined by an agent of the insurer, and a full description thereof to be made, and the insurable value thereof to be fixed by such agent."

As to these words there is no room for construction. The language is plain, definite and unequivocal, and makes manifest the object and intent of the legislature in enacting this statute, with reference to which, and in connection with which, the words in question must be read.

The agent is to examine, and make a full description of the building or structure, with reference to its actual or inherent condition and surroundings, so there can be no dispute thereafter in regard thereto, and in order to intelligently ascertain and fix its insurable value. The agent is not required to do any act save such as relates solely to the building itself as a building—its condition and situation as regards surrounding objects, and its insurable value.

The words "Any change" are general words, and the subject-matter or thing in regard to which a change might occur is not named; and such subject-matter or thing as to which a change might occur must therefore be the object the lawmaker was legislating about, to-wit:—the building to be insured, the thing the insurer is required to examine for itself. Where the subject-matter of change is left, as here, to implication or inference, we must ascertain it by reference to the context, if possible, and if any be there named, the true inference is that the objects so named are the ones intended. If the legislature intended any other, it would be most natural that they would be expressly named.

The legislature left the subject-matter of change to be ascertained by construction, under the well known rules of law. The word "change" must be confined in its reference to that which goes before in the same sentence, the building and its surroundings and value, and to those matters which were open to the sight and observation of the agent in connection therewith. It does not refer to the interest of the assured or to his title, or to incumbrances, and therefore could not include within its reference any defect of title, misrepresentation as to title or ownership, or of the placing liens upon the property thereafter. The insurable value is the same, whether owned by the applicant or by another person; or whether mortgaged or not. This construction is in conformity to all the well known rules of law, as to the interpretation of statutes. To apply words to anything outside of their legitimate meaning, as derived from their connection with other words of the statute; to extend such meaning to other matters which do not appear to have been within the contemplation of the law-maker, about which the law-maker was not, according to the words of the act, legislating or providing for, would simply be the addition of words to the statute by judicial legislation, under the guise of construction.

This statute is to be construed the same as any other statute, and a fundamental rule in the construction of statutes, whether remedial or not, is: "all words of a general nature, not express and precise, are to be restrained unto the fitness of the subject-matter, or the person"; which is the same in effect as that rule of grammar which requires, as a general thing, a limiting clause or phrase, following several expressions to which it might be applicable, to be restrained to the last antecedent.

In Brigel v. Starbuck, 34 O. S., 280, in which the question was whether the statute authorizing an appeal from "any order, decision or decree, made under an act regulating the mode of administering assignments in trust for the benefit of creditors, by any person against whom such order, decision or decree shall be made, or who may be affected thereby," applied to an order appointing an assignee, selected by, and at a meeting of creditors, Okey, J., pp. 286 and 287, says:

"There can be no doubt that general words in a statute will sometimes be limited in their application. Thus, although the statute to prevent frauds declares that fraudulent conveyances shall be deemed utterly void and of no effect, yet they are held to be valid, except as to creditors and purchasers. Burgett v. Burgett, 1 Ohio, 469. The word 'void' in a statute is indeed frequently construed to mean avoidable. Terrill v. Auchauer, 14 O. S., 80. The word 'all' in an act is to be construed in a general or universal sense, according to the demands of sound reason. Stone v. Elliott, 11 O. S., 252. Words, however broad, must be construed in view of the territorial limit to the powers of the legislature. Woodward v. Michigan, etc. R. R. Co., 10 O. S., 121. And it is a general rule that 'all words, whether they be in deeds or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter or person.' Steamboat Messenger v. Pressler, 13 O. S., 255; Tracy v. Card, 2 O. S., 431; Maxwell on State, 54."

So it was held in that case that the general words: "Any order, decision or decree," etc., should be read with reference to other sections of the statute on the subject, and restrained unto the fitness of the subject-matter, to-wit, orders that were definitive and final in their character, and that no appeal was permitted in the case. And in Aultman v. Seiberling, 31 O. S., 201, it was held, in construing the same act, that an appeal did not lie from an order confirming a sale made by an assignee.

As bearing upon the question, I may refer to some other of the cases in Ohio, where similar rules, reaching the same result, have been applied.

In Shultz v. Cambridge, 38 O. S., 659, in construing an ordinance which prohibited saloon-keepers from permitting "at, in, or about the doors, windows, openings, or in the interior of their saloons, any blinds or screens, painted or frosted glass, shades, curtains or other device," the words, "or other device," was held not to embrace a board partition between different rooms of the building; and the court declared the rule to be: "General words, following particular and specific words, must, as a general rule, be confined to things of the same kind as those specified."

In Lane v. State, 39 O. S., 312, in construing section 7215, Rev. Stat., the court say: "Counsel for the state endeavor to sustain the conviction under sec. 7215, Rev. Stat., which provides, among other things, 'that an indictment shall not be deemed invalid' for any certain enumerated defects, 'nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits.' But the defects mentioned relate to matters of form, and the words quoted apply only to such matters as are ejusdem generis with those comprehended in the preceding part of the section."

In Myer v. Seaberger, 45 O. S., 234, it was held, that while a person is required by sec. 2734, Rev. Stat., to list for taxation all monies invested or otherwise controlled by him, as agent or attorney, or on account of any other person or persons, it did not apply to a case where the attorney had no authority to loan. That the phrase, or otherwise controlled by him, "must be construed to mean in a manner similar to the loaning and investing of money. For it is a settled rule of construction that in accordance with the maxim *noscitur a sociis* the meaning of a word may be ascertained by reference to the meaning of words associated with it; and again, according to a similar rule, the coupling of words together shows that they are to be understood in the same sense."

In Howland v. Carson, 28 O. S., 628, in construing the provision of the Bankrupt Act, which provided that "No debt created by fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in a fiduciary character, shall be discharged by proceedings in bankruptcy, etc.," it was said, "The word debt, in the act, is said to be synonymous with claim, and embraces claims created by fraud. If we apply the maxim *noscitur a sociis* to this section, it is clear that the claim must be one sounding in contract,

as it applies to debts created by fraud, embezzlement, defalcation or breach of trust arising out of a fiduciary relation. Debts arising from either of these classes sound in contract, and are founded on contracts express or implied."

In Elliott v. Shaw, 32 O. S., 431, in construing section 313 of the Civil Code, which provided that "no party to a civil action shall testify * * * where the adverse party is the guardian * * * or is a party claiming or defending as heir, grantee or devisee of a deceased person, etc.," it was held, that the word grantee, applied only to transfers of real estate; and it is said, p. 438: "A grantee is one to whom a grant is made and the word grant is a generic word, applicable to all transfers of real estate and incorporeal rights, though in its largest sense, it comprehends everything that is granted or passed from one to another, and is applicable to every species of property."

In a Pennsylvania case, In re Brady Street, 99 Pa. St., 591, in commenting on an act giving jurisdiction to the court of common pleas to appoint viewers to assess the damages. whenever a borough "might change the grade or lines of any street or alley, or in any way alter or enlarge the same," it was held, "to be intended to give a remedy to an abutting owner, when his property was injured by a change of grade. It does not apply however in cases where it is desired to obtain damages for the opening or widening of a street or alley." And the court say: "Looking at the manifest object of the act, we must read these general words ('or in any way alter or enlarge the same') in connection with such object."

Applying these rules of construction to the statute in question, it is clear to a majority of the court, that it refers to such changes only as may occur thereafter in respect to the building, its physical condition, surroundings, and insurable value, and in respect to those things in connection with the building, which were open to sight and observation of the agent making the examination—that the legislature had nothing further in contemplation. That the legislative intent was to have the insurable value of the building, and the measure of damages for its loss, fixed and determined in advance, and put into the policy; and to place it beyond cavil, and to prevent the evil consequences flowing from over-insurance, and to prohibit technical defenses as to these special matters, it was provided that the insurer should cause the building to be examined by an agent, and a full description thereof to be made, and the insurable value fixed by such agent; and there is nothing to indicate an intention to restrict the right of the parties to contract, as theretofore, in regard to acts on the part of the insured in respect to title, ownership, sale or incumbrance of the property which should render the policy void, before any loss happened.

If we look to the old law, and the evil to be remedied, the result would not be different. The old law allowed insurance companies to insure buildings for a large amount over and above their insurable value, and in an action upon the policy in case of loss, they could cut down the recovery to the actual cash value of the premises at the time of the fire, or defeat a recovery for any sum by reason of slight differences in the condition and surroundings of the building from the statements in the application. The evils to be remedied, therefore, were to prohibit insurance companies from exacting premiums on a larger valuation than they would pay in case of loss, and to prevent over-insurance, and not only to prevent it on the part of the companies, but to so prohibit it, that there should be no inducement on the part of the owner, by an excessive valuation or insurance upon the property, to burn it himself, and to stop these technical defenses.

These were the only things in contemplation of the law maker at the time of the drafting and enactment of this statute, because the remedy for the evils provided for—that the insurer shall examine the building, make a full description thereof, and determine and fix its value, and that the value so fixed, should be the measure of damages for the property, in case of a recovery for a total loss—applies to none other.

That public policy requires unreasonable conditions and forfeitures to be prohibited, is no reason why a forced construction should be placed upon statutes in reference thereto, leading to unjust results in an opposite direction, in disregard of all salutory rules of construction. The judicial department of the government discharges its duty if it gives to such legislation a just, fair and reasonable construction, leaving to the legislature the duty and privilege of supplying all deficiencies and omissions, and remedying all defects therein.

As I have said, if the legislature designed to include other things; if they designed to foreclose inquiry as to all questions which might arise upon policies, growing out of the numerous provisions and conditions of such instruments, and which public policy might seem to require, it would have been easy and wise to have said so, and it is reasonable to suppose that they would have said so.

It is apparent, therefore, that the clauses "in the absence of any change increasing the risk, without the consent of the insurer," and "and also of the intentional fraud on the part of insured," were inserted for the benefit and protection of the insurer, and to limit the rights intended to be secured to the insured in regard to such condition, surroundings and value; and were not intended to broaden the scope of the statute, and to confer upon the insured any additional rights. If they were intended for the benefit and protection of the insurer, in respect to the matters named, they could not also be intended to deprive the insurer of the benefit of any and all defenses springing out of breaches on the part of the insured of all other provisions and conditions of the contract which would render the policy void, before a loss occurred, and to confer upon the insured such additional rights; and to so hold, would be doing violence to the language of the statute, and to run counter to all known rules of interpretation.

If the clauses in question refer to title and ownership, or if they do not, and yet the two defenses named are the only ones open to the insurer, the result would be disastrous. If the insured, in either case, represented that he was the sole owner of the building, and that it was free of incumbrances, and did so in good faith with no intention to defraud, and it should turn out that he did not own the building, or that others owned it jointly with him, or that it was incumbered to its full value, he could still compel payment of the policy, if the building was burned. Such a mischievous result could hardly have been intended by the legislature.

And again, if being the owner, he should subsequently sell and convey the building, in the ordinary course of affairs, without fraudulent intent, he could still compel payment, in case of loss, unless the improbable would happen, to-wit: that a jury would find that the risk had been increased from a danger of the insured committing arson to obtain the insurance money. The uncertainty, risk and difficulty, if not the utter impossibility, of obtaining such a verdict, of itself should cause courts to avoid imposing such risk and hardship upon insurers, unless the language of the statute plainly required it.

Clearly, such an interpretation should not be given to a doubtedly-worded statute. In such a case, the argument, *ab inconvenienti*, applies with much force.

It would render it repugnant to all sense of justice, to my mind, if the claim made is correct, that all intentional fraud on that part of the insured in regard to these matters, by which the insurer may have been induced to act, and to forebear inquiry, is immaterial, and will not defeat a recovery.

In Ins. Co. v. Lesley, 47 O. S., 418, it was held: "the statements in the application of the value of the property, and its condition in regard to which the company should have been informed by the examination the statute required it to make, were immaterial, upon which the insurer had no right to rely, and could not be fraudulent." And if such examination should be held to extend to title, ownership, incumbrances, and every condition of the contract as made by the parties, under this ruling, it is claimed that all intentional fraud on the part of the applicant would be immaterial, and the insurer would be bound to pay the value of the building, as named in the policy, however base the fraud may have been. If so, it would be no defense to show that the applicant never had title to, or owned any part of it, or that his statements in reference to these matters were false; and thus the provision of the statute as to intentional fraud on the part of the assured, would be rendered entirely nugatory.

At first blush it would seem as if the words in the statute expressly saved to the insuring company, the right to defend on the ground of intentional fraud, whether its provisions related to the building, its surroundings and its value only,

**or** whether it included title, ownership, incumbrances, and every condition attached to the contract; but it seems that it does not; and although apparently expressly saved by the statute, intentional fraud, in some respects, is of no avail to the insurer. But our court of last resort, in the case referred to, has not gone the length claimed, but has limited the application of this doctrine to the value of the property, and its condition and surroundings at the time of the examination by the insurer, which were open to sight and observation, excluding, even as to the building itself, those which were not; as to which I may instance, the hidden construction and defects of chimneys and flues—potent factors in the origin of fires, in dwelling houses especially.

It appears that two of the circuit courts of the state have expressed opinions adversely to ours, by reason of what they supposed was decided in the Insurance Co. v. Lesley, *supra*, which went from this court, and wherein the unanimous judgment of this court, affirming the judgment of the common pleas court, was affirmed. But the judgment of this court, in affirming that of the common pleas, was based, in some respects, upon grounds different from those adopted by the Supreme Court, and did not cover all the points decided by the Supreme Court in the case.

In the case of Peoples' Mutual Fire Ins. Co. v. Bowersox, 3 Ohio Circ. Dec., 218, it was held that:

"Under sections 3643 and 3644, Rev. Stat., a policy insuring against loss by fire, is not, necessarily avoided by the recovery of judgments against the assured, subsequent to the issuing of the policy, and before the loss, which judgments become statutory liens upon the property covered by the policy, even though it be stipulated in the policy, that if the assured shall procure, or suffer to accrue any incumbrance covering the property therein specified, or any part thereof, the insurance thereunder shall immediately cease and determine. In order to have that effect, in the absence of fraud, it must appear that the recovery of the judgments diminished the insurable interest to the owner of the property insured, to an extent that materially increased the risk."

From the opinion (Scribner, J.) it appears the court relied upon Insurance Co. v. Lesley, as establishing that doctrine.

So of the case from the Cleveland Circuit, United Firemen's Ins. Co. v. Kukral, *ante* 633 which was a case in reference to a subsequent mortgage, the court, without discussing the question, simply relied upon the case of Ins. Co. v. Lesley, as establishing the doctrine that if it did not increase the risk, which was a question for the jury, that it was no defense; notwithstanding the policy provided, like the one in the case at bar, that any subsequent incumbrance, placed upon the property without the knowledge or consent of the insurer, would render the policy void.

Aside from these two cases, about all the cases that can be found bearing upon the proposition, are cited in Ins. Co. v. Lesley, and the defenses relied upon in those cases, if they were not in regard to matters that were in existence at the time the policy was issued, or matters expressly named in the statute in question, were (1) failure to furnish proofs of loss; or (2) to fix the value of the burned building by arbitration; or (3) to a change of occupancy, and the Lesley case itself is not an exception. In the Lesley case, the special defenses were, (1) that in his application for the policy, assured falsely and fraudently represented and warranted that the building mentioned in the policy was of the value of one thousand dollars, whereas the same did not exceed in value the sum of two hundred and fifty dollars, as he well knew; and (2) falsely and fraudulently stated, represented and warranted, that the building was then occupied as a private dwelling and store-room, whereas the building was then unoccupied, as he well knew, and that the agent of the company did not examine the property, and such examination was waived by the plaintiff; and (3) that no arbitration was had concerning the loss, or award made, fixing the value of the building at the time of the loss. If the failure to furnish proofs of loss was a litigated question in the case at all, aside from the question of waiver, it was only in so far as the actual cash value of the

property was concerned; and two of the other defenses also related solely to such value, and were barred by the provisions of the statute on that subject.

The only defense then outside, if it be outside at all, of the inherent condition and insurable value of the property, was that the assured represented that the building was occupied as a private dwelling and store-room, whereas, in fact, it was vacant. That was as to its use and occupancy at the time the policy was issued, and not to a change of occupancy thereafter. Whether a change of occupancy would be embraced within the terms of this statute, is perhaps immaterial in this case as it was in the Lesley case. We are not called upon to decide, therefore, whether under this statute any future change of use or occupancy of the building would or would not avoid the policy.

But in Ins. Co. v. Wells, 42 O. S., 519, it was held that:

"An absolute condition in a fire insurance policy, on a dwelling-house, that the policy shall be void if the building insured be vacated of left unoccupied, avoids the policy, although the vacation of the house results from the permanent removal of the tenant of the insured during the running of the lease, without the knowledge or consent of the landlord."

Although this case was decided after the passage of the Howland law, no reference was made to the statute by the court. Whether they regarded it as not applicable, or overlooked it, as suggested by Scribner, J., in People's Mutual Fire Ins. Co. v. Bowersox, *supra*, I am not prepared to say; but I can say this, that if the court examined the authorities referred to in the brief of counsel, that question must have presented itself to the mind of the court, because one case at least— Sleeper v. Ins. Co., 56 N. H., 401, was referred to, which was a decision under the statute of that state quoted in the opinion in Ins. Co. v. Lesley, *supra*.

The learned judge who delivered the opinion in Ins. Co. v. Lesley, *supra*, in addition to quoting the statute of New Hampshire, quoted largely from the case of Chamberlain v. Ins. Co., 55 N. H., 249, construing that statute. That was a case where the plaintiff, a mortgagee, insured the buildings on the mortgaged premises against loss by fire in the defendant company. The policy provided that in case of loss, the insurance should be paid to the mortgagee to the amount of the mortgage, and contained a condition that the policy should be void if the premises should become vacant, without immediate notice to the company, and its consent endorsed thereon. The mortgagor afterwards removed from the premises and they remained vacant for several months, when they were destroyed by fire. And a majority of the court held that under their statute it was immaterial, and did not bar recovery.

The apparent approval of tnat case by the Supreme Court, seems to have had some influence upon the court in People's Mutual Fire Ins. Co. v. Bowersox, 3 O. C. D., 218, in producing the decision in that case; yet the case to which I have referred, Sleeper v. Ins. Co., 56 N. H., 401, held directly the reverse, and expressly overruled Chamberlain v. Ins. Co. But I do not understand that the very able judge, who delivered the opinion in Ins. Co. v. Lesley, cited the case of Chamberlain v. Ins. Co., as an authority upon the proposition that allowing the property to become vacant, under such a policy, would render the policy void in our state, because of the provisions of our statute. Indeed, the learned judge took care even not to state what the decision of the New Hampshire court was upon that question, and he used the case merely to show the public policy of such statutes, and that their provisons were a part of the contract, and not to be waived by the assured.

In Sleeper v. Ins. Co., *supra*, it was also decided, that the mistake or misrepresentation which, according to their statute, would make the policy void (in our statute the intentional fraud), referred, and were to be confined to matters occurring at the time the policy was obtained, and not to matters occurring subsequently.

There is nothing, to my mind, in the decision we are announcing, or in the construction which we put upon this statute, that in any manner conflicts with

the holding in the Lesley case. The decision in that case, goes to the value of the property, and such matters in connection with its condition and use, as the agent of the company might see and observe, when he was performing the duty enjoined upon him by the statute. Nothing beyond this was in the case, and the language of the court should be read and understood as referring to these things only.

On page 415 it is said in the opinion:

"If, after the policy is issued, there be any change in the condition or surroundings of the property, which increases the risk, without the consent of the insurer, or if there be intentional fraud on the part of the insured, these are regarded by the statute as matters of substance, and may defeat a recovery on the policy; but where there has been no intentional fraud on the part of the insured, a condition or situation of the property at the time of the insurance, which the examination that the agent is required by the statute to make, should have reasonably discovered, cannot we think, be made available for that purpose; nor can the insurer, in case the property is entirely destroyed, be allowed to show that the value of the property is less than the amount mentioned in the policy."

It is apparent that the court was only considering questions in regard to the condition and surroundings of the property, and its value at the time the insurance was made, and such matters in connection therewith as the statute required the agent to examine and determine, and which he might have observed upon inspection, and not at all the questions we have before us in this case.

With these views expressed, it follows that the judgment of the court below must be reversed.

FRAZIER, J., concurs.

WOODBURY, J. (dissenting).

I have not been able to agree with my brethren upon the rules of construction which should be applied to this statute, and for that reason, I shall state the rule which in my judgment should obtain in construing this statute, without attempting to review the conditions of this policy or the questions involved in the two cases just disposed of. I shall confine myself entirely to what I deem to be the true rule which is to be applied to the construction of the statute. The rule which has been applied in this case, in my judgment, is not the rule which is to be the true guide; while the rule which has been applied is a rule which is well recognized in the construction of statutes, yet it is not a universal rule; but often other rules are applied in the construction of statutes which override this rule, and control the courts, and that rule is, the intention of the legislature.

In order to determine what the intention of the legislature is, it is necessary to go back and review, investigate and determine the mischiefs which the particular legislation was intended to remedy.

The Supreme Court of this state, in the case to which we have been referred, that of Ins. Co. v. Lesley, 47 O. S., 409, have adopted that rule as the rule of construction, and in speaking upon it in the opinion, on page 413, Judge Williams says:

"The conditions contained in policies of insurance, both life and fire, and the execeptions to the risk and the contingencies upon which the company should be relieved from liability, became so numerous and complicated, usually printed in small type on the back of the policy, in terms which persons unlearned in the law or business of insurance would not readily understand, that it became a matter of no little difficulty for the assured to tell whether the policy afforded him any indemnity or not; and when the event insured against, happened, the uncertainty of his claim against the company constrained him to abandon, compromise or litigate it. The legislatures of several of the states enacted statutes designed to give greater certainty to the contract of insurance, and protect the assured against unreasonable forfeiture and defenses, which statutes it is generally held apply to and control all policies issued subsequently to their enactment. Of this character is the act of the legislature of this state, passed March 5, 1879, entitled 'An act to regulate contracts of insurance on buildings and structures.' This act with some important verbal changes, is carried into the revision of 1880, and is now sections 3643 and 3644 of the Revised Statutes."

Those were the conditions which the legislature of this state were attempting to provide against, at the time of the passage of the act of 1879. It did not alone

.apply to fire insurance policies, for the legislature had been called upon, for the
.same reasons, to legislate upon life insurance policies.

In 1878 the legislature of this state passed an act, sec. 3625, Rev. Stat., apply-
.ing to life insurance, in which they provided that

"No answer to any interrogatory made by an applicant in his or her application for a
.policy, shall bar the right to recover upon any policy issued upon such application, or be
.used in evidence upon any trial to recover upon such policy, unless it be clearly proved that
.such answer is wilfully false, and was fraudulently made, that it is material, and induced the
.company to issue the policy, and that but for such answer the policy would not have been
.issued; and moreover that the agent of the company had no knowledge of the falsity or fraud
.of such answer."

By sec. 3626 Rev. Stat., the legislature provided that:

,"All companies after having received three annual premiums on any policy issued on
.the life of any person in this state, are estopped from defending upon other ground than
.fraud against any claim arising upon such policy, by reason of any errors, omissions, or mis-
.statements of the assured, in any application made by such assured, on which the policy
.was issued, except as to age."

We now come down to 1879, when the legislature of the state commenced
legislating in regard to fire insurance, when this act was passed, and the object
.and purpose of all these statutes was to relieve persons who were holding policies
.of insurance upon the face, from being defeated by the innumerable conditions
which were attached to the back of the policy, or to a separate sheet of
.paper.   The condition of affairs had become such, not only in Ohio, but in all of
.the states of this Union, that while it appeared that a man had insurance upon
.the face of the policy, yet upon the back of it there were such conditions as that he
.had in fact no insurance; and so it is said by the supreme court, in the case to
which I have referred in Ins. Co. v. Lesley, 47 O. S., and so it is said by the
.supreme court of New Hampshire in the case referred to—47 O. S., 409.

Upon the question as to whether this rule should be always applied I call
.attention to the case of Woodworth v. State, 26 Ohio, 197.   This is a case that
went up from this county.   McIlvaine, Judge, says:

"It is contended on behalf of the plaintiff in error, that the words, 'or other officer,' as
.used in this statute, are limited in their meaning to officers connected with the administration
.of justice under the direction of the courts.   This contention is based chiefly on that rule
for the construction of statutes which, as is claimed, limits the meaning of the words of
.general description to persons or things within the class or classes designated by preceding
words or particular description.   It must be remarked that the rule of construction referred
to above, can be used only as an aid in ascertaining the legislative intent, and not for the
purpose of confining the operation of a statute within limits narrower than those intended
by the law maker.   It affords a mere suggestion to the judicial mind that where it clearly
.appears that the law-maker was thinking of a particular class of persons or objects, his
words of more general description may not have been intended to embrace those not within
.the class.   The suggestion is one of common sense.   Other rules of construction are, how-
.ever, equally potent, especially the primary rule which suggests that the intent of the legis-
lature is to be found in the ordinary meaning of the words of the statute.   Another well
.established principle is, that even the rule requiring the strict construction of the penal
statutes, as against the prisoner, is not violated by giving every word of the statute its full
.meaning, unless restrained by the context."

One of the earlier cases bearing upon this question is the case of Adm'r of Tracy v.
Adm'r of Card, 2 O. S., and I will read from page 441:   "Hence the ancient maxim. that
.has been styled 'a fundamental rule of construction,' that remedial statutes shall be construed
.liberally."   1 Chitty's Black., 61, note 30, "there are three points," says Blackstone, "to be
considered in the construction of all remedial statutes," the old law, the mischief and the
remedy; that is, how the common law stood at the making of the act; what the mischief
was for which the common law did not provide; and what remedy the parliament has pro-
vided to cure this mischief.   And it is the business of the judges so to construe the act
.as to suppress the mischief and advance the remedy."   Ibid, 60.

"The equity of a statute," says Coke, "is a construction made by the judges, that cases
.out of the letter of a statute, yet being within the same mischief, or cause, of the making of
.the same, shall be within the same remedy that the statute provideth.   Inst. 24 b."   The
words of a remedial statute are to be construed largely and beneficially so as to suppress the
mischief and advance the remedy.   It is by no means unusual in construing remedial statutes,
.to extend the enacting words beyond their natural import and effect, in order to include
cases within the same mischiefs."   Dwarr. on Statutes, 734, 5.   "It frequently becomes the

duty of courts, in order to give effect to the manifest intentions of a statute, to restrain or qualify, or enlarge the ordinary meaning of the words used. It is said that the power of construing a statute is in the judges who have authority over all laws, and more especially over statutes, to mould them according to reason and conscience to the best and truest use." Citing Burgett v. Burgett, 1 Ohio, 469.

What was the mischief that led to the enactment of the 25th section of our statute hereinbefore quoted? The answer is obvious. The supreme court, in Ins. Co. v. Lesley, have recited the mischief against which the legislature were seeking to provide a remedy. If that was the mischief, then the remedy is to be extended. If other provisions or conditions in policies were of a kind and character that they were protecting wrong all over the state, and were defeating parties from recovering insurance upon their property upon mere technicalities, that did not go to the substance; if that is what they were providing for as is said in the case the 47th Ohio State Reports, then we are to look to those things with a view of determining what the legislature meant when they sought to provide two grounds upon which a recovery might be defeated; or, in other words, when they provided that the amount of the policy should be paid in the absence of the two grounds.

The first provision of the statute provides for the fixing of the insurable value of the property by the agent of the company. This is the provision which is in the Wisconsin statute; but that statute stops there, and it furnishes us no aid in the construction of our statute; because the legislature in our case did not stop there, but it went forward further, and after providing that the agent of the company should fix the insurable value of the property, then it provided when it should be paid. The legislature were not content in simply stopping with the fact that the agent of the company should fix the insurable value of the property; but they go forward and provide that in the absence of any change increasing the risk without the consent of the insurers, and also of intentional fraud on the part of the insured in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurers receive a premium shall be paid.

The first provision here evidently provides for what may occur subsequently; but it is not a mere change. It must, in order to defeat the recovery, be such a change as increases the risk, and this is to be without the consent of the insurer. Then it provides also, in the absence of intentional fraud on the part of the insured it shall be paid. It seems to me that the legislature intended to do something more than to provide for what should occur at the time of the fixing of the value of the property by the agent. If they did not intend to provide more, why did they undertake to carry in the language, then, "In the absence of intentional fraud on the part of the insured?" What had he to do with fixing the insurable value of the property? That was an act which required the value to be fixed by the agent, and if they intended that language to apply to the insured, I can conceive of but one thing where it could be said that the insured could practice a fraud upon that agent in determining the insurable value of the property, and that would be where the insured took the agent to another piece of property—to another building—representing it as the building which he desired to get insurance upon, and causing him to fix the insurable value upon it, and then getting another building into the policy.

Of course, there are many things that may arise subsequently to the issuing of the policy. As to the extent that this statute shall govern, as to subsequent matters, I will not now undertake to discuss. I have simply said what I have, because I dissent with my associates upon the true rule which is to be applied to this statute in construing it. In my judgment, the rule upon which the majority of the court have based their opinion does not apply; but like the case in 26 O. S., we are to look to the intent of the legislature; we are to look to the mischiefs which they were seeking to remedy, and whatever they are, we are there to extend the remedy.

I may say the rule to which I have referred has been applied to numerous cases in the state of Ohio, both prior and subsequent to the decision in 47 O. S.,

409, and I am influenced in this regard because the supreme court, in the case of 47 O. S., 409, followed that rule, instead of the rule of narrower construction, and because it is just.

I also cite Henry v. Trustees, 48 O. S., 675–6–7; Board of Education v. Board of Ed., 46 O. S., 598–9; Endlich on Interpretation of Statutes, sec. 295; Ins. Co. v. Bowersox, *ante*; Turnpike Co. v. Parks et al., 50 O. S., 568; Cross v. Armstrong, 44 O. S., 613; Sawyer v. State ex rel. Horr, 45 O. S., 344.

*Squire, Sanders & Dempsey*, for plaintiff in error.
*Northway & Fitch* and *A. J. Trunkey*, for defendants in error.